# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALIA BRYANT,<br><br>        Petitioner,<br><br>    v.<br><br>MOLLY HILL, *Warden*,<br><br>        Respondent. | Case No. ED CV 15-1217-CAS (JCG)<br><br>**ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND DENYING CERTIFICATE OF APPEALABILITY** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus ("Petition" or "Pet.") and accompanying Memorandum in Support of the Petition ("Memorandum" or "Mem."), [Dkt. No. 1], Respondent's Answer to the Petition ("Answer"), [Dkt. No. 11], Petitioner's Traverse ("Traverse"), [Dkt. No. 13], the Magistrate Judge's Report and Recommendation ("R&R"), [Dkt. No. 17], Petitioner's Objections to the R&R ("Objections"), [Dkt. No. 18], and the remaining record, and has made a *de novo* determination.

In her Objections, Petitioner generally reiterates the arguments set forth in her Memorandum and Traverse. There are three issues, however, that warrant brief discussion here.

1

### A. Ground One: Instructional Error

First, Petitioner argues again that the trial court violated due process by failing to *sua sponte* instruct on the lesser-included offense of involuntary manslaughter. (Objections at 8-14.) Specifically, Petitioner argues that the Magistrate Judge erroneously found that (1) Petitioner's claim is not cognizable under federal habeas corpus, and (2) even if the claim is cognizable, Petitioner's argument fails on the merits. (*Id.* at 9.)

As explained in the R&R, "the failure of a state court to instruct on a lesser offense in a non-capital case fails to present a federal constitutional question," and may "not be considered in a federal habeas corpus proceeding." (*See* R&R at 3) (citing *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (*per curiam*)). However, the Magistrate Judge explicitly explained in the R&R that an exception to the rule applies if failure to give a lesser-included offense prevents a defendant from presenting his or her theory of the case. (*Id.*) The Magistrate Judge concluded that because Petitioner's counsel requested an instruction on involuntary manslaughter but later withdrew it, Petitioner was not denied instruction on her theory of defense. (*Id.*)

In the Objections, Petitioner argues that she was prevented from presenting her theory of the case because in addition to the court's failure to instruct on involuntary manslaughter, her counsel was ineffective in failing to request the instruction. (Objections at 11.) Petitioner contends that the trial court "should have *sua sponte* included the instruction for involuntary manslaughter, since trial counsel committed reversible error by not vigorously arguing for its inclusion." (*Id.* at 12.)

In support of her claim, Petitioner cites to *Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002), for the notion that "'[t]he trial judge is . . . barred from attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused.'" (Objections at 12.) However, *Bradley* is vastly distinguishable from the instant case. In *Bradley*, the defense's theory relied solely on entrapment. *Bradley*, 315 F.3d at 1094. During the initial trial, the jury was

instructed on an entrapment defense, which resulted in a hung jury. (*Id.*) During the re-trial, the evidence presented was "*exactly*" the same as the first trial, yet when defense counsel specifically requested an entrapment instruction, the trial court denied the request. (*Id.* at 1098.) Based on these facts, the Ninth Circuit found that the second trial judge impermissibly manipulated the jury. (*Id.*) Thus, the Ninth Circuit concluded that the trial court cannot *prevent* the defense from presenting its theory, as the Magistrate Judge recognized in the R&R. Contrary to Petitioner's argument, *Bradley* does not create a requirement for the trial court to *sua sponte* instruct a jury on a lesser offense.

Furthermore, unlike in *Bradley*, the trial court in the instant case did not deny trial counsel's request for instructions. Indeed, the trial court offered Petitioner's counsel the opportunity to articulate an involuntary manslaughter theory, but Petitioner's counsel affirmatively decided against including the instruction. (R&R at 3; Lodg. No. 2, Reporter's Transcript ("RT") at 1876.) Moreover, Petitioner's counsel specifically indicated that she did not intend to argue involuntary manslaughter, and thus it was not part of Petitioner's defense. (RT at 1876.) Therefore, as explained in the R&R, Petitioner's claim fails because she was not denied the opportunity to present her defense theory.

Finally, Petitioner argues that she was effectively prevented from presenting her defense because her trial counsel did not vigorously request an instruction. (Objections at 12.) This conflates Petitioner's arguments of instructional error and ineffective assistance of counsel. As stated, there is no requirement for the trial court to *sua sponte* provide the instruction and thus any potential deprivation of constitutional rights would result from trial counsel's ineffective assistance, not the trial court's jury instructions.[1]

Accordingly, the trial court did not commit reversible instructional error by not instructing the jury on the lesser offense of involuntary manslaughter.

---

[1] The Court discusses the issue of ineffective assistance of counsel in Section B.

B.  **Ground Two: Ineffective Assistance of Counsel**

Second, Petitioner argues that her counsel was ineffective for not vigorously requesting an instruction on involuntary manslaughter because the facts demonstrate that the jury could have concluded that Petitioner was guilty of involuntary manslaughter. (Objections at 15-18.) Specifically, Petitioner once again argues that sufficient evidence exists to support a finding of involuntary manslaughter "under either of two theories: 1) that the killing was committed without malice during the misdemeanor crime of brandishing a weapon (*i.e.*, misdemeanor manslaughter); or, 2) that Petitioner committed a lawful act (self-defense) with criminal negligence." (*Id.* at 15.)

In the Objections, Petitioner challenges the R&R's finding that the Court of Appeal found that Petitioner necessarily committed the felony of assault with a deadly weapon. (*Id.* at 16.) Petitioner asserts that the Court of Appeal found that "*if* she committed any crime at all, [she] committed at least assault with a deadly weapon." (*Id.*) (emphasis added.) As such, Petitioner argues that there is the possibility that no crime was committed at all. (*Id.*)

However, contrary to Petitioner's contention, the Court of Appeal conclusively found that Petitioner committed the felony crime of assault with a deadly weapon when she thrust a knife forward at the victim during a domestic dispute. (Lodg. No. 5 at 22-23 (California Court of Appeal decision finding that "[t]he evidence thus demonstrated that [Petitioner] 'committed an assault with a deadly weapon . . . on [the victim], an inherently dangerous felony, causing [the victim's] death.'")); (*id.* at 25 ("[F]or the reasons stated above, [Petitioner's] act in stabbing Robert was *at least* a felony assault with a deadly weapon.") (emphasis added).) In her Objections, Petitioner erroneously relies on the Supreme Court of California's language. *See People v. Bryant*, 56 Cal. 4th 959, 966 (2013) (Supreme Court of California opinion stating that "as the Court of Appeal reasoned, [Petitioner], *if she committed any crime at all*, committed at least assault with a deadly weapon . . . .") (emphasis added.)

4

As the United States Supreme Court has repeatedly held, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). Here, the Court of Appeal made the interpretation and the Supreme Court of California merely relied on the Court of Appeal's interpretation. Therefore, and as explained in the R&R, the Court of Appeal's determination that Petitioner committed *at least* felony assault with a deadly weapon is binding. As a result, both of Petitioner's theories of involuntary manslaughter are without merit, and trial counsel's affirmative decision to not request the jury instruction for involuntary manslaughter does not amount to ineffective assistance of counsel. *See Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") (internal citation omitted).

### B. Ground Three: Juror Misconduct

Finally, Petitioner reiterates her argument that juror misconduct resulted in a denial of her Sixth Amendment right to an impartial jury. (Objections at 18-24.) In a sworn statement, Petitioner's mother, Agnes Bryant ("Bryant"), alleges that approximately two days before the defense rested, she saw a group of jurors in the hallway and overheard one of the jurors say to another juror "I wonder what other tricks they have up their sleeves." (Objections, Ex. C ("Bryant Decl.") at 1.) Petitioner's mother "interpreted this as a comment regarding [Petitioner] and her defense team." (Bryant Decl. at 1.) Petitioner's mother did not mention this statement to anyone until she testified at the sentencing hearing. (Objections at 19.)

As stated in the R&R, the Ninth Circuit has held that "*Remmer* and *Smith* do not stand for the proposition that *any time* evidence of juror bias come to light, due process requires the trial court to question the jurors alleged to have bias." (R&R at 7 (citing *Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003)). Rather "the court should

5

'consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source.'" (R&R at 8 (citing *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005)). Briefly, the R&R found that, as the Petitioner's mother, she was inherently biased. (R&R at 8.) Moreover, the timing of when Petitioner's mother came forward suggests that she did not view the statement as troublesome. (*Id.*) Further, the "the trial court could reasonably have viewed the allegation as reflecting the juror's view that the defense case was weak, as opposed to reflecting that any juror was biased against Petitioner or had prejudged the case." (*Id.*)

Petitioner disagrees with the R&R's conclusion that a hearing into the circumstances of this exchange was not mandated by clearly established Supreme Court authority. (Objections at 19.) Contrary to the R&R conclusion that the juror's statement demonstrated implied bias, "Petitioner continues to aver that the juror's statement demonstrated overt bias towards Petitioner, and the trial court abused its discretion by not conducting a hearing to investigate such juror misconduct." (Objections at 22.) However, Petitioner fails to cite to any clearly established Supreme Court authority that would mandate the trial court to conduct a hearing in the instant case. Petitioner merely offers alternate explanations for the conclusions in the R&R.

First, Petitioner provided a sworn statement from Petitioner's mother explaining that she delayed notifying the trial court of the juror's statement because she did not understand the importance of the statement. (Bryant Decl. at 2.) Petitioner also argues that the R&R's determination that Petitioner's mother was biased is speculation and not based on conclusions of fact. (Objections at 20.) Similarly, Petitioner argues that the R&R's determination that the juror's comment "could have been 'an off-hand remark made in passing by a juror'" is also based on speculation. (Objections at 20 (citing R&R at 9).)

These alternate explanations do not demonstrate that the juror had an "overt bias towards Petitioner," as Petitioner alleges. (Objections at 19.) More importantly, these explanations do not demonstrate that the trial court's decision to not conduct a hearing

violated clearly established Supreme Court authority. (*Id.* at 22.) Therefore, Petitioner's juror misconduct claim does not warrant federal habeas relief.

Accordingly, IT IS ORDERED THAT:

1. The Report and Recommendation is approved and accepted;

2. Judgment be entered denying the Petition and dismissing this action with prejudice; and

3. The Clerk serve copies of this Order on the parties.

Additionally, for the reasons stated in the Report and Recommendation, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus, the Court declines to issue a certificate of appealability.

DATED: December 13, 2017

HON. CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE